[Cite as *Brate v. Rolls-Royce Energy Sys., Inc.*, 2012-Ohio-4577.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| PATRICK BRATE | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Sheila G. Farmer, J. |
| -vs- | : | |
| | : | |
| ROLLS-ROYCE ENERGY | : | |
| SYSTEMS, INC., ET AL. | : | Case No. 12CA000001 |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common
Pleas, Case No. 11WC050285


JUDGMENT:      Reversed and Remanded


DATE OF JUDGMENT:      September 27, 2012


APPEARANCES:

For Plaintiff-Appellant      For Rolls-Royce Energy Systems, Inc.

MARK A. ADAMS      PRESTON J. GARVIN
1110 Beecher Crossing North      DANIEL M. HALL
Suite D      181 East Livingston Avenue
Columbus, OH  43230      Columbus, OH  43215

For Ohio Bureau of Workers'
Compensation

JOHN SMART
150 East Gay Street, 22nd Floor
Columbus, OH  43215

*Farmer, J.*

{¶1}    On October 7, 2007, appellant, Patrick Brate, twisted and injured his right knee while working for appellee, Rolls-Royce Energy Systems, Inc.  Appellant applied for and was granted workers' compensation benefits for right knee sprain and internal derangement.

{¶2}    Appellant subsequently requested the Industrial Commission to allow the claim for right medial meniscus tear, loose chondral bodies in the right knee, and substantial aggravation of pre-existing osteoarthritis of the right knee.  The Industrial Commission denied the request.

{¶3}    Appellant appealed to the Court of Common Pleas of Knox County.  On October 19, 2011, appellee filed a motion for summary judgment, claiming there was no genuine issue of material fact regarding medical causation.  By judgment entry filed December 13, 2011, the trial court granted the motion.

{¶4}    Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶5}    "IN THIS WORKERS' COMPENSATION ACTION, THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHERE PLAINTIFF-APPELLANT'S TREATING PHYSICIANS OPINED THAT A WORK-RELATED ACCIDENT PROXIMATELY CAUSED A SUBSTANTIAL AGGRAVATION OF PRE-EXISTING OSTEOARTHRITIS IN PLAINTIFF-APPELLANT'S KNEE, AND WHERE THEIR OPINIONS WERE SUPPORTED BY EVIDENCE OF

PLAINTIFF-APPELLANT'S HISTORY AND OBJECTIVE AND SUBJECTIVE DIAGNOSTIC TESTS AND CLINICAL FINDINGS."

II

{¶6} "IN THIS WORKERS' COMPENSATION ACTION, THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHERE PLAINTIFF-APPELLANT'S TREATING PHYSICIANS OPINED THAT A WORK RELATED ACCIDENT PROXIMATELY CAUSED AN ACCELERATION OF PLAINTIFF-APPELLANT'S PRE-EXISTING OSTEOARTHRITIS, AND THE TRIAL COURT IMPROPERLY APPLIED THE 'SUBSTANTIAL AGGRAVATION' STANDARD OF O.R.C. 4123.01(C)(4) TO THIS TYPE OF WORK-RELATED INJURY."

I, II

{¶7} Appellant claims the trial court erred in granting summary judgment to appellee on his workers' compensation claim. We agree.

{¶8} Summary-judgment motions are to be resolved in light of the dictates of Civ.R. 56. That doctrine was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 448:

{¶9} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State*

*ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327."

{¶10} As an appellate court reviewing summary-judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35.

{¶11} The issue posed by appellee's motion for summary judgment was that appellant could not satisfy the requirements of R.C. 4123.04(C)(4) which states the following:

{¶12} " 'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. 'Injury' does not include:

{¶13} "(4) A condition that pre-existed an injury unless that pre-existing condition is substantially aggravated by the injury. Such a substantial aggravation must be documented by objective diagnostic findings, objective clinical findings, or objective test results. Subjective complaints may be evidence of such a substantial aggravation. However, subjective complaints without objective diagnostic findings, objective clinical findings, or objective test results are insufficient to substantiate a substantial aggravation."

{¶14} Appellee argues objective diagnostic findings, objective clinical findings, or objective tests results were not presented to establish the substantial aggravation of appellant's pre-existing condition, right knee osteoarthritis. Appellee argues William Elder, M.D., appellant's primary care physician, could not point to any objective findings

or test results to establish the existence of pre-existing osteoarthritis or its substantial aggravation.as he deferred to the findings of appellant's treating physician, Gregory Cush, M.D. Appellee argues Dr. Cush's testimony failed to establish objective findings or test results that appellant's condition was made worse or substantially aggravated.

{¶15} In response, appellant argues both physicians opined there was a substantial aggravation, and the accident accelerated the osteoarthritis that existed prior to the October, 2007 accident. Appellant argues it is sufficient to prove by objective diagnostic findings, objective clinical findings, or objective test results that the pre-existing condition existed prior to the incident and subjective complaints can be evidence of substantial aggravation.

{¶16} R.C. 4123.01 specifically delineates that subjective complaints standing alone are insufficient to establish a substantial aggravation. However, subjective complaints, coupled with objective diagnostic findings, objective clinical findings, or objective test results are sufficient. It is conceded sub judice that there are no objective diagnostic findings or test results, but appellant argues there are objective clinical findings. Objective diagnostic findings or test results are all concrete, tangible concepts; however, objective clinical findings do not provide a bright-line test. Merriam-Webster online dictionary defines "clinical" as:

{¶17} "**1 :** of, relating to, or conducted in or as if in a clinic; as

{¶18} "**a :** involving or concerned with the direct observation and treatment of living patients." http://www.merriam-webster.com/medical/clinical.

{¶19} "Clinical findings have been defined as observations, judgments or assessments about patients.

{¶20} "***

{¶21} "3. Findings cannot be *temporally* separate from the observing of them (you can't observe them and say they are absent, nor can you have the finding present when it is not capable of being observed).

{¶22} "4. They cannot be defined in terms of an underlying pathological process that is present even when the observation is not present." http://www.snomed.org/eg?t=findings_clinical_findings.

{¶23} "Objective" means the observations are identifiable and capable of description i.e., a person limps or is bleeding.

{¶24} By necessity, the wording of the statute requires an analysis of the expert testimony presented in each case. Specifically, the gravamen of this appeal is whether there is evidence of a substantial aggravation of osteoarthritis in the experts' objective clinical findings.

{¶25} The best evidence is generally given by one who can offer direct testimony of what he/she observed and if that person is an expert, what conclusions or objective clinical findings he/she made.

{¶26} Although there is much back and forth on direct and cross-examination as to Dr. Cush's testimony, it is abundantly clear that Dr. Cush provided direct testimony of his observations during the arthroscopic procedure he performed on appellant and the clinical conclusions he reached. During the diagnostic arthroscopy, Dr. Cush observed "preexisting osteoarthritic changes." Cush depo. at 20. Dr. Cush explained osteoarthritis is classified as Grade 1 to Grade 4. Id. Dr. Cush observed a tear of the medial meniscus, and pre-existing osteoarthritis changes of "Grade 2, moderate Grade

2 chondral changes, as well as a rare Type 3 chondral changes." Id. at 21, 23. The chondral changes were cracks and fissures "in the cartilage, and loose bodies are floating fragments inside the joint." Id. at 21. Chondral changes are similar to what is observed when bathtub grouting breaks and flakes between the tiles. Id. at 20. Because the arthritic changes were of the advanced pathology, they existed prior to the accident and were made worse by the trauma to the knee. Id. at 30-31. Dr. Cush opined the osteoarthritis predated the accident and was made worse by the twisting and torquing forces applied to the knee due to the accident, relying on the following evidence:

{¶27} "Objective is my clinical exam demonstrating valgus instability, stress testing demonstrating an MCL injury, arthroscopic evaluation with the intra photographs demonstrating the medial meniscus tear. Subjective in that my patient, who seems like an outstanding citizen, says that my knee hurts and it did not hurt before, and he did have continued medial joint line pain, despite arthroscopic portions being resected, joint pain and a torn meniscus, take out that torn portion, that pain should go away." Id. at 32.

{¶28} Dr. Cush further opined the accident accelerated appellant's osteoarthritis:

{¶29} "Q. In your opinion, Doctor, did that twisting injury in any way accelerated Mr. Brate's osteoarthritis?

{¶30} "A. I think so. In my clinical experience, plenty of folks have an aggravation due to a particular accident, a twisting injury, and then very rapidly their x-ray findings only worsened. Again, osteoarthritis is much worse in an accelerated

fashion, and furthermore can be accelerated by the fact that a partial menisectomy was performed. We know that." Id. at 33.

{¶31} On cross-examination, Dr. Cush stated there was no objective evidence of osteoarthritis prior to the accident; however, his objective findings after the accident were the result of his "visualization on surgery and the photographs taken, still photographs, and the interpretation of the MRI." Id. at 46. On redirect, Dr. Cush explained in doing the actual operation, he verified why appellant "had persistent joint medial line pain***even after the meniscus tear was repaired and the collateral ligament healed." Id. at 50.

{¶32} Dr. Elder found appellant's MRI suggested pre-existence of osteoarthritis in the right knee. Elder depo. at 25. Dr. Elder opined there was substantial aggravation of the osteoarthritis:

{¶33} "Q. Okay. Using the MRI, the operative report and your own examination and findings, was there objective evidence that you can point to that - - in which you believe would show that there was a substantial aggravation of the osteoarthritis?

{¶34} "A I think that there was a substantial aggravation of the arthritis, he did have some breakdown of the articular surfaces and according to Dr. Cush's notes, there was definitely some injuries at the back of the patella, as well as some loose bodies within the knee joint." Id. at 26.

{¶35} Dr. Elder concluded, as did Dr. Cush, that once the repair was done to the medial meniscus, the pain and tenderness appellant continued to experience suggested aggravation of the osteoarthritis. Id. at 26-27. When asked if the accident caused

substantial aggravation of the osteoarthritis, Dr. Elder stated, "I think it certainly was accelerated," explaining the following:

{¶36} "Ah, it became - - we start deteriorating at age 18, all our joints are starting to show some arthritic changes. If we injure a joint, we have an inflammatory response in that joint. This type of injury certainly could have accelerated or promoted an advanced injury to the knee and increased arthritis in the knee thus leading to chronic pain." Id. at 28.

{¶37} Although the words "I think" were used, the matter was corrected via the preliminary questioning of appellant's trial counsel wherein Dr. Elder agreed to answer the questions "based on a reasonable degree of medical certainty." Id. at 25, 27-28.

{¶38} Employing the standard of a Civ.R. 56, motion, we find the testimonies of Drs. Cush and Elder are sufficient to establish the existence of genuine issues of material facts to overcome the motion for summary judgment.

{¶39} Upon review, we find the trial court erred in granting summary judgment to appellee.

{¶40} Assignments of Error I and II are granted.

{¶41} The judgment of the Court of Common Pleas of Knox County, Ohio is hereby reversed.

By Farmer, J.

Delaney, P.J. and

Gwin, J. concur.


s /  Sheila G. Farmer_____


s / Patricia A. Delaney_____


s / W. Scott Gwin_____

JUDGES


SGF/sg 907

[Cite as *Brate v. Rolls-Royce Energy Sys., Inc.*, 2012-Ohio-4577.]

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PATRICK BRATE | : | |
| Plaintiff-Appellant | : | |
| -vs- | : | JUDGMENT ENTRY |
| ROLLS-ROYCE ENERGY SYSTEMS, INC., ET AL. | : | |
| Defendants-Appellees | : | CASE NO. 12CA000001 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Knox County, Ohio is reversed, and the matter is remanded to said court for further proceedings consistent with this opinion. Costs to appellee Rolls-Royce Energy Systems, Inc.

s / Sheila G. Farmer_____

s / Patricia A. Delaney_____

s / W. Scott Gwin_____

JUDGES